Frith *vs.* Siler.

THOMAS D. FRITH, plaintiff in error, *vs.* ELDRIDGE SILER, defendant in error.

1. So long as no one is injured by it, a party who has disclaimed the ownership of property may retract the disclaimer and assert his title.
2. If a party who has once disclaimed the ownership of property, afterward asserts his title, and warns another not to buy it, and the latter, with a knowledge that the assertion of title, and warning were subsequent to the disclaimer, buys the property, he acts in his own wrong.
3. If, on the other hand, the disclaimer, after an inspection of the property, was subsequent to the assertion of title, and the warning not to buy, and the purchaser was so informed, he was justified in disregarding the warning.

Trover, in Randolph Superior Court.  Tried before Judge PERKINS, at November Term, 1860.

This was an action brought by Thomas D. Frith, against Eldridge Siler, to recover damages for the alleged conversion by the latter, of a certain gray horse belonging to the former.

Upon the trial it was shown, that the plaintiff purchased from one John W. Collier, in the spring of 1853, a gray horse, that Collier and several other witnesses confidently assert was the horse in controversy, and that the horse was taken or stolen from the possession of the plaintiff in the fall of 1853; that the horse was worth from $175 00 to $200 00, and was worth for hire, the sum of $30 00 *per annum;* that before defendant bought the horse, the plaintiff notified him that the horse was his, and not to trade for him, because he (plaintiff) would not have the horse at any cost; that after the defendant bought the horse, the plaintiff made a demand for him, and defendant refused to give him up.

It also appeared from the evidence, that the horse in dispute was swapped for in the State of Alabama, on the 16th November, 1853, by one John H. Lassiter, who sold him afterward to S. F. Lassiter, by whom he was also sold to John T. McLendon; that whilst McLendon owned the horse, he having heard that plaintiff claimed him, procured the latter to examine the horse, and after close inspection, pointed out several marks of difference between the horse in controversy

and the one that was stolen from him, and told McLendon that the horse was not his, and that he (McLendon) could sell him whenever he chose so to do; that when defendant was negotiating with McLendon for the purchase of the horse, he told the latter that plaintiff claimed the horse and had warned him not to trade for him, whereupon McLendon told defendant that plaintiff had examined the horse, pronounced him not to be his, and stated that McLendon was at liberty to trade him whenever he pleased; that upon this assurance defendant bought the horse from McLendon.

When the testimony was closed, the Court charged the jury, "that if the plaintiff examined the horse whilst he was in the possession of McLendon, and admitted that it was not his horse, and that he (McLendon) could trade, that he (plaintiff) is bound by the admission, although he, after such admission, and before defendant traded for the horse, notified him that if it was his (the plaintiff's) horse, he would have it or die, and not to trade for him, if McLendon notified defendant what plaintiff had admitted to him."

The jury found for the defendant, and plaintiff moved for a new trial, on the grounds:

1st. That the verdict was contrary to law and contrary to evidence, and decidedly against the weight of the evidence.

2d. That the Court erred in charging the jury as before stated.

The presiding Judge refused the new trial, and that decision is the error assigned.

HOOD and ROBINSON, for plaintiff in error.

DOUGLASS & DOUGLASS, *contra.*

*By the Court.*—JENKINS, J., delivering the opinion.

The exceptions presented by this record impute error both to the finding of the jury and to the charge of the Court.

It is urged that the verdict rendered is contrary to evidence and contrary to law.

Whether or not it is contrary to law must depend upon

the facts of the case, and unfortunately the proofs submitted leave a very important question of fact in great doubt.

It appears that the plaintiff in error had a horse stolen from him, and subsequently commenced an action of trover against the defendant for the horse.

The defendant unquestionably had in his possession a horse very much resembling that stolen from the plaintiff. All experience proves that cases of this sort often present very nice questions of identification, and upon such questions this Court would be very reluctant to disturb the conclusions of a jury. Each party relies upon declarations of the plaintiff made before the purchase of the horse in dispute, by the defendant. It appears that this horse had been four times sold after the disappearance of plaintiff's horse, the buyer in each instance being a purchaser without notice, except in the last; and here the sayings of the plaintiff became important.

The defendant proved, by two witnesses, that when the horse was in the possession of McLendon, from whom he purchased, the latter having heard that this horse had been stolen from the plaintiff, sent to request that he would come and examine the horse, and decide whether or not it was his; that plaintiff went, carefully inspected the horse, and positively disclaimed him, designating points of difference between the two, and adding that McLendon might dispose of him whenever he pleased.

Plaintiff, on the other hand, proved by one witness that previous to the defendant's purchase, plaintiff had warned him not to buy the horse, for that if the horse was his, he was resolved to have him at any cost; and by another, he proved the same warning, adding that the horse was his, and that he would have him at any cost. It also appears that this warning would have deterred the defendant from buying the horse, but for the repetition to him, by McLendon, of plaintiff's disclaimer, and consent that McLendon might sell the horse.

But it does not appear from the testimony whether the disclaimer to McLendon, or the warning to defendant, was posterior in the order of time, and had there been nothing

in the charge of the Court, to mislead the jury, we would presume that they found the warning to defendant not to buy the horse, to have been prior to his inspection and disclaimer of the horse, and under that state of facts would have sustained their verdict. But it is also objected that the Court charged the jury in effect that the disclaimer of the plaintiff, if communicated to the defendant, estopped the former, even though the warning by him to the latter was subsequently given. Was this correct? May he not have changed his opinion as to the identity of the horse from further inspection, or from other evidence? In that event, was he necessarily estopped by his disclaimer?

1. We think that so long as nobody was injured by his disclaimer, there remained to him a *locus penitentiæ.* He might, whilst the horse continued in McLendon's possession, have retracted it even as to him.

If the warning was given by him, to defendant, after this disclaimer, and the defendant knew it to be so, then the retraxit, as to him, was sufficient, and he acted in his own wrong.

2. If, on the other hand, the disclaimer to McLendon after the inspection, was subsequent to the warning given the defendant, the latter was, upon being so informed, justified in disregarding the warning. The jury should have been so charged. But they must have inferred, from the charge of the Court, that it was immaterial, which was made last in point of time, that the disclaimer was binding upon the plaintiff, under all circumstances, and may thus have been misled. Had the law been correctly given in charge to the jury, we would not have disturbed their verdict, but inasmuch as the charge of the Court may have controlled the case, we think there should be a re-hearing.

Let the judgment be reversed.